IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

ADRIENNE HALBERSTAM,

      Plaintiff,

v.

VEREIT, INC.,
GLENN J. RUFRANO,
HUGH R. FRATER,
PRISCILLA ALMODOVAR,
DAVID B. HENRY,
MARY HOGAN PREUSSE,
RICHARD J. LIEB,
EUGENE A. PINOVER,
JULIE G. RICHARDSON, and
SUSAN E. SKERRITT,

      Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Adrienne Halberstam ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

### NATURE OF THE ACTION

1. Plaintiff brings this action against VEREIT, Inc. ("VEREIT" or the "Company") and the members of VEREIT's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their agreement to merge with Realty

Income Corporation ("Realty Income") (the "Proposed Transaction").

2.     On April 29, 2021, VEREIT and Realty Income entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which VEREIT stockholders will receive 0.705 shares of Realty Income common stock for each VEREIT share that they own. Following the close of the Proposed Transaction, Realty Income and VEREIT will effectuate a taxable spin-off of substantially all of their office properties into a new, self-managed, publicly traded real estate investment trust ("REIT") ("SpinCo"). Realty Income's current shareholders are expected to own approximately 70% of the combined company and SpinCo, with current VEREIT shareholders owning approximately 30%.

3.     On June 29, 2021, VEREIT filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC, which omits and/or misrepresents material information concerning the Proposed Transaction. The failure to adequately disclose such material information renders the Proxy Statement false and misleading.

4.     The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. VEREIT operates and maintains forty-one of its commercial properties in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

**PARTIES**

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of VEREIT common stock.

9. Defendant VEREIT is a Maryland corporation with its principal executive offices located at 2325 E. Camelback Road, 9th Floor, Phoenix, Arizona 85016. The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "VER."

10. Defendant Glenn J. Rufrano is, and has been at all relevant times, Chief Executive Officer and a director of the Company.

11. Defendant Hugh R. Frater is, and has been at all relevant times, Non-Executive Chairman of the Board and a director of the Company.

3

12. Defendant Priscilla Almodovar is, and has been at all relevant times, a director of the Company.

13. Defendant David B. Henry is, and has been at all relevant times, a director of the Company.

14. Defendant Mary Hogan Preusse is, and has been at all relevant times, a director of the Company.

15. Defendant Richard J. Lieb is, and has been at all relevant times, a director of the Company.

16. Defendant Eugene A. Pinover is, and has been at all relevant times, a director of the Company.

17. Defendant Julie G. Richardson is, and has been at all relevant times, a director of the Company.

18. Defendant Susan E. Skerritt is, and has been at all relevant times, a director of the Company.

19. Defendants identified in paragraphs 10 to 18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Company Background**

20. VEREIT is a full-service real estate operating company which owns and manages one of the largest portfolios of single-tenant commercial properties in the U.S. The Company has total real estate investments of $14.6 billion including approximately 3,800 properties and 88.9 million square feet. VEREIT's business model provides equity capital to creditworthy corporations in return for long-term leases on their properties.

**The Proposed Transaction**

21. On April 29, 2021, VEREIT and Realty Income issued a joint press release announcing the Proposed Transaction stating, in pertinent part:

> SAN DIEGO and PHOENIX, April 29, 2021 -- Realty Income Corporation (NYSE: O) ("Realty Income"), The Monthly Dividend Company®, and VEREIT, Inc. (NYSE: VER) ("VEREIT") today announced that the two companies have entered into a definitive merger agreement by which Realty Income will acquire VEREIT in an all-stock transaction, creating a combined company with an enterprise value of approximately $50 billion.  Under the terms of the agreement, VEREIT shareholders will receive 0.705 shares of Realty Income stock for every share of VEREIT stock they own.
>
> Immediately following the closing, the companies expect to effectuate a taxable spin-off of substantially all of the office properties of both companies into a new, self-managed, publicly traded REIT ("SpinCo").  Following the merger and the spin-off, Realty Income will continue as the surviving public entity.  Realty Income and former VEREIT shareholders are expected to own approximately 70% and 30%, respectively, of both Realty Income and SpinCo.
>
> The transactions are expected to be over 10% accretive to Realty Income's AFFO per share in year one, add meaningful diversification that further enables new growth avenues, strengthen cash flow durability, and provide significant financial synergies, particularly through accretive debt refinancing opportunities.  Realty Income's growth strategy will remain focused primarily on high-quality, single-tenant net lease retail and industrial properties in the U.S. and U.K., leased to clients that are leaders in their respective businesses.
>
> "We believe the merger with VEREIT will generate immediate earnings accretion and value creation for Realty Income's shareholders while enhancing our ability to execute on our ambitious growth initiatives," said Sumit Roy, President and Chief Executive Officer of Realty Income.  "Together, our company will enjoy increased size, scale, and diversification, continuing to distance Realty Income as the leader in the net lease industry.  VEREIT's real estate portfolio is highly complementary to ours, which we expect to further enhance the consistency and durability of our cash flows."
>
> "The objective of our management team from initiation in 2015 was to revitalize VEREIT and increase the value of the enterprise," said Glenn Rufrano, Chief Executive Officer of VEREIT.  "We put an excellent team in place, enhanced the portfolio, created an investment-grade balance sheet and resolved all legacy issues. The board and management have concluded that a merger with Realty Income, the premier net lease company, will enable us to recognize the value created.  The combined company provides all of our constituencies the opportunity to benefit

from the advantageous cost of capital and growth potential generated by this transaction."

**Strategic and Financial Rationale**

- **Immediate AFFO per share accretion**. Relative to the $3.465 midpoint of Realty Income's 2021 AFFO per share guidance, the transaction is expected to be over 10% accretive to shareholders on an annualized, leverage-neutral basis.
- **Increased and diversified scale driving growth**. The complementary nature of each company's real estate portfolio results in greater diversification of client credit, industry, and geography, providing further runway for Realty Income to grow in its chosen verticals with best-in-class clients without compromising prudent concentration metrics.
- **Enhanced leadership amongst blue chip benchmarks**. Upon closing of the merger, Realty Income is expected to become one of the six largest REITs in the MSCI US REIT Index (RMZ) by equity market capitalization and among the top half of constituents in the S&P 500, resulting in increased weighting in major benchmark equity indices and further growing its net lease industry-leading trading liquidity.
- **Dividend stability**. Realty Income is one of only three REITs in the S&P 500 Dividend Aristocrats Index® for having increased its dividend every year for the last 25 consecutive years and the improved diversification effectuated through the merger is expected to further enhance the durability of Realty Income's dividend coverage. VEREIT's shareholders are expected to experience an immediate increase in the dividend upon closing of the merger. Dividend payments for both companies are expected to remain uninterrupted through the close of this transaction.
- **Fortress balance sheet and continued credit rating leadership in the net lease industry**. Realty Income is currently the only net lease REIT with A3/A- credit ratings from Moody's and S&P and intends to maintain target leverage (as defined as Net Debt and Preferred Equity / Adjusted EBITDAre) in the mid-5x area. Upon closing of the merger, Realty Income's enhanced scale and diversification are expected to be credit positives.
- **Cost of capital advantages amplified**. Realty Income's cost of capital advantage is driven by its superior credit ratings in the net lease industry and historical premium to NAV, which allows it to consistently grow AFFO per share while assembling a best-in-class real estate portfolio. Post-merger, shareholders are expected to benefit from this cost of capital advantage applied towards a broader set of growth opportunities across its combined investment pipeline.
- **Attractive debt refinancing synergies**. As one of eight U.S. REITs with two credit ratings of at least A3/A- by Moody's and S&P, Realty Income is uniquely positioned to refinance VEREIT's upcoming debt maturities at materially lower rates in multiple currencies. Furthermore, Realty Income's

- accelerating investment activity in the U.K. further allows for significantly lower all-in borrowing costs in the high-grade unsecured bond market relative to the U.S.  As of December 31, 2020, VEREIT had approximately $6 billion of outstanding debt at a weighted average interest rate of approximately 4% and a weighted average term to maturity of approximately 6 years.  In addition, pro forma for previously disclosed activity in January 2021, VEREIT has approximately $373 million of outstanding preferred equity at a rate of 6.7%, which is freely prepayable at par.
- **Meaningful corporate cost synergies to further enhance scalability of platform**.  On a run-rate basis, Realty Income expects to achieve estimated annualized corporate cost synergies of $45 - $55 million inclusive of stock-based compensation, and an estimated $35 - $40 million of annualized synergies on a cash basis.  An estimated 75% of savings are expected to be achieved in the first 12 months post-closing.  In 2020, Realty Income's G&A margin as a percentage of revenue (excluding tenant reimbursements) was approximately 4.7% and its 4Q20 annualized G&A as a percentage of gross real estate asset value was 0.32%.  Both metrics were the lowest in the public net lease industry.

**Realty Income Pro Forma Metrics**

After giving pro-forma effect for the closing of the merger and assuming the anticipated spin-off of the office assets, Realty Income's shareholders will own a diversified global portfolio of approximately 10,300 primarily single-tenant, net lease commercial real estate properties located in 50 U.S. states, Puerto Rico and the U.K.  In addition, utilizing reported portfolio metrics for each company as of December 31, 2020:

- Total portfolio annualized contractual rent is expected to be approximately $2.5 billion
- Approximately 83%, 14% and 3% of total portfolio annualized contractual rent is expected to be generated from retail, industrial, and other property types, respectively
- Approximately 45% of total portfolio annualized contractual rent is expected to be generated from investment grade clients
- The 10 largest clients are expected to be Walgreens (5% of annualized contractual rent), Dollar General (4%), Dollar Tree/Family Dollar (4%), FedEx (3%), 7-Eleven (3%), LA Fitness, (3%), Walmart/Sam's Club (2%), CVS Pharmacy (2%), Sainsbury's (2%) and BJ's Wholesale Clubs (2%)
- The 10 largest industries are expected to be Convenience stores (9% of annualized contractual rent), Grocery stores (8%), Dollar stores (8%), Drug stores (8%), Restaurants – casual dining (7%), Restaurants – quick service (7%), Health & Fitness (5%), Home improvement (4%), Theaters (4%), and Transportation services (4%)

- Realty Income expects to maintain leverage (as defined as Net Debt and Preferred Equity / Adjusted EBITDAre) of approximately 5.5x, supported by a $3.0 billion unsecured revolving credit facility and $1.0 billion commercial paper program

**"SpinCo" Pro Forma Metrics**

The planned spin-off of the office portfolio maintains Realty Income's preferred portfolio mix, consistent with its focused investment strategy of acquiring high quality real estate leased primarily to retail clients that have a service, non-discretionary, and/or low-price-point component to their business, and industrial clients that are primarily investment grade rated companies and leaders in their respective industries.

Upon completion of the planned spin-off, shareholders of both companies are expected to receive a stock distribution in a separate, publicly traded REIT, subject to customary conditions. The anticipated spin-off of substantially all of the combined companies' office properties is expected to result initially in a pure-play, self-managed portfolio of 97 domestic office properties.

In addition, utilizing reported portfolio metrics for each company as of December 31, 2020 and pro forma for closed transaction activity in 2021:

- Total portfolio annualized contractual rent is expected to be approximately $183 million
- Approximately 76% of total portfolio annualized contractual rent is expected to be generated from investment grade clients
- Top five largest clients are expected to be GSA (10% of annualized contractual rent), Cigna (7%), Merrill Lynch (6%), HealthNow (4%), and RSA (4%)
- Top five largest industries are expected to be Health care (17% of annualized contractual rent), Telecommunications (14%), Insurance (13%), Financial services (11%), and Government services (11%)
- Pro forma contractual rent collected in 4Q20 was in excess of 99%

Pursuant to the terms of the merger agreement, Realty Income may also seek to sell some or all of the combined companies' office properties, subject to certain restrictions. In addition, Realty Income may elect to retain some or all of the companies' office properties following the closing of the merger. As such, the pro forma information described above is subject to change.

**Leadership and Governance**

Realty Income will continue to be led by President and Chief Executive Officer Sumit Roy and its existing senior management team. Michael D. McKee will

remain Realty Income's Non-Executive Chairman of the Board of Directors. Upon closing, two VEREIT directors will be appointed to the Realty Income board.

**The Proxy Statement Materially Misleads VEREIT Stockholders by Omitting Material Information**

22. On June 29, 2021, defendants filed the materially incomplete and misleading Proxy Statement with the SEC and disseminated it to VEREIT's stockholders. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy Statement is rendered misleading by the omission of critical information.

23. *First*, the Proxy Statement omits material information regarding the Company's and Realty Income's financial projections.

24. For example, the Proxy Statement fails to disclose the Company's and Realty Income's unlevered free cash flows, as well as the definition of unlevered free cash flows and all underlying line items.

25. The Proxy Statement also fails to disclose the line items underlying Cash Net Operating Income and Adjusted Funds From Operations over the projection period for each of the VEREIT Standalone Projections and the Realty Income Adjusted Standalone Projections.

26. *Second*, the Proxy Statement omits material information regarding J.P. Morgan Securities, LLC's ("J.P. Morgan") financial analyses.

27. With respect to J.P. Morgan's *Public Trading Multiples* analyses for VEREIT and Realty Income, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies observed, respectively.

28. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of VEREIT and Realty Income, the Proxy Statement fails to disclose: (i) the Company's and Realty Income's unlevered free cash flows for fiscal years 2021 through 2023 used in the analysis; (ii) the unlevered

terminal free cash flows for the Company and Realty Income; (iii) the terminal values for VEREIT and Realty Income; (iv) the inputs and assumptions underlying the discount rates ranging from 6.5% to 7.0% for VEREIT, and 5.875% to 6.375% for Realty Income; and (v) the net debt for VEREIT and Realty Income.

29. In sum, the omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading, in contravention of the Exchange Act. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

30. Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

31. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

32. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about VEREIT's and Realty Income's financial projections and J.P. Morgan's financial analyses. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

33. The omissions and false and misleading statements in the Proxy Statement are

material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

34. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

35. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

36. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

37. The Individual Defendants acted as controlling persons of VEREIT within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of VEREIT and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

38. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

39. In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

40. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

41. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

42. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, VEREIT's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 23, 2021

Respectfully submitted,

/s/ Richard A. Acocelli
Richard A. Acocelli
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**FEDERMAN & SHERWOOD**
William B. Federman
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
Fax: (405) 239-2112
-and-
212 W. Spring Valley Road
Richardson, Texas 75081

*Attorneys for Plaintiff*